PER CURIAM.
Claimant Modesto Alvarez seeks the reversal of the judge of compensation claims’ (“JCC”) denial of his workers compensation benefits arising from an automobile accident. The JCC denied the claim, ruling that “claimant’s accident was not in the course and scope of his employment” because the claimant was merely returning home from work and was not performing a work-related task. The claimant argues that at the time of the accident the claimant was on a special errand that had a business purpose. We agree with the claimant, and therefore reverse.

I. Background

At the time of the accident, the claimant had been employed by Sem-Chi Rice Products Corporation for 17 years. His normal working hours were from 6:00 a.m. until 5:00 p.m. during weekdays and until noon on Saturdays. During the harvest season, he would frequently work on Sundays. He is seventy years old and has a sixth grade education.
On the day of the accident, the claimant arrived at work around 6:00 a.m. and was scheduled to finish working at around 5:00 p.m. The claimant testified that at approximately 2:30 p.m., he received a telephone call from Klaus Sengelmann, the vice president and general manager of Sem-Chi Rice. Mr. Sengelmann instructed the claimant to go to the Senglemann residence in Wellington in order to assemble a computer table for Mrs. Senglemann. The claimant testified that Mr. Senglemann told the claimant to inform his immediate supervisor that Mr. Sengelmann had instructed the claimant to go to the Sengel-mann house. The claimant had to obtain permission to leave the plant from his immediate supervisor. The claimant testified that he informed his supervisor as instructed, and his supervisor testified that the claimant told him he was going to the *515 Sengelmann house at Mr. Sengelmann’s request. The claimant testified that he had been asked to do personal jobs for Mr. Sengelmann while on the clock on multiple occasions.
The claimant testified that on the day of the accident he left the Sem-Chi Rice plant in Belle Glade at 3:15 or 3:20 p.m. When he arrived at the Senglemann home, he and Mrs. Sengelmann opened up a box that contained a computer table. The claimant looked at the manual and instructions for assembly of the table. After reviewing the manual, the claimant concluded that there was not enough time remaining for him to assemble the table. Consequently, the claimant informed Mrs. Sengelmann that it would be better for him to take the table home with him, assemble it and then return it to her the next day. It was his intention to keep the table in his trunk overnight, take it to work the next morning, assemble it at work, and then return it to Mrs. Senglem-ann by 10:00 a.m.
The claimant estimated that he left the Sengelmann home around 4:35 p.m. and was in an automobile accident approximately five minutes later while on his way home. The claimant lost consciousness and was injured in the accident. After the claimant arrived home from the hospital at approximately 11:00 p.m. that night, he asked his son-in-law to take the computer table that was in his car to the plant the next day and deliver it to Carlos Castillo, a plant employee, for assembly and delivery to Mrs. Senglemann by 10:00 a.m. Carlos Castillo confirmed that on the day following the accident someone brought a computer table in a box to his office. Mr. Castillo informed Mr. Senglemann that the box had been sent to him. Mr. Castillo testified that Mr. Sengelmann said that he did not know what box Mr. Castillo was talking about and said it was possibly a table that his wife had given as a gift to the claimant.
When the claimant returned to work sixteen days following the accident, the box containing the computer table was in his office. The claimant asked Mr. Sengel-mann what had happened to Mrs. Sengel-mann’s table because it had not yet been assembled. The claimant testified that Mr. Sengelmann stated that he had no idea what the claimant was talking about. There is disputed testimony over whether claimant was “on the clock” when the accident occurred.[1] Mr. Sengelmann testified that he did not instruct the claimant to go to his house to put a table together for his wife, and contended that the computer table was a gift. The claimant does not own a computer.
The JCC ruled that the factual dispute regarding the reason for Appellant’s visit to the Sengelmann home on the day of the accident was irrelevant:
5. It is immaterial as to which version of events is credible. The caselaw is clear that, whether or not the computer table in his trunk was a gift, if the accident occurred on his way home, the auto accident is not compensable as a work related accident.
6. If the computer table was a gift, then the claimant was not in the course and scope of his employment. However, even if the computer [table] was not a *516 gift and was simply being stored in the claimant’s car, then the accident still occurred outside the course and scope of employment, since the claimant has testified that he was not planning on putting together the table until the following day at work. I have relied on the 1st DCA’s 1981 decision, Viejo Arco Iris, Inc. v. Louaces[Luaces], 395 So.2d 225 (Fla. 1st DCA 1981)....
8.... [T]he computer table is not actually a work-related paraphernalia, but was of a personal nature for the manager of the company himself, having nothing to do with anything related to Sem-Chi itself. Therefore, I find that the computer table does not even arise to the level of “work-related paraphernalia.” In addition, there is no sufficient business purpose for carrying the computer table to be assembled for the manager’s personal residence.
We agree with the JCC that if the computer table was a gift, then the claimant was not in the course and scope of his employment. However, under the facts and circumstances of this case, we hold that if the computer table was not a gift, and Mr. Sengelmann requested the claimant to assemble the table at his personal residence, then the accident was compensable. Accordingly, we reverse.

II. Dual Purpose and Special Errand

“As a general rule, injuries sustained by an employee when going to or coming from his regular place of work are not considered to have arisen out of and in the course of his employment.” George v. Woodville Lumber Co., 382 So.2d 802, 803 (Fla. 1st DCA 1980). This rule “is grounded in the recognition that injuries suffered while going to or coming from work are essentially similar to other injuries suffered off duty away from the employer’s premises and, like those injuries, are usually not work related.” Eady v. Med. Pers. Pool, 377 So.2d 693, 695 (Fla.1979). The principle is commonly known as the “going and coming rule” and is codified in section 440.092(2), Florida Statutes (1999), which provides that an injury suffered while going to or coming from work is not a compensable work related injury “unless the employee was engaged in a special errand or mission for the employer.”
The instant case falls within the dual purpose and special errand exceptions to the going and coming rule. In Tampa Airport Hilton Hotel v. Hawkins, 557 So.2d 953 (Fla. 1st DCA 1990), the claimant was employed as a banquet waitress at the Tampa Airport Hilton Hotel. At the employer’s request, she returned to the employer’s premises to attend a staff meeting called by the employer. Id. at 954. After the meeting ended, while on her direct route home from the meeting, the claimant was involved in an automobile accident. Id. On appeal, this court affirmed the JCC’s findings that the accident was compensable because the purpose of the trip during which the claimant was injured served a business purpose for the employer as well as the personal convenience of the claimant. Id. at 955.
In Spartan Food Systems & Subsidiaries v. Hopkins, 525 So.2d 987 (Fla. 1st DCA 1988), the claimant was employed at a Hardee’s restaurant in Pensacola. On the day of the accident, the claimant received a telephone call from her supervisor asking her to stop at a Hardee’s in Milton to obtain extra beverage cups and bring them with her to work. Id. at 988. The claimant left home thirty-five minutes early in order to complete the errand, and the trip to Milton required her to depart from her usual route to work. The claimant went to Milton as requested by the employer and obtained the cups. After resuming her normal route to work, her vehicle was rear-ended while she was *517 stopped in traffic. Id. Even though the claimant had returned to her usual route to work at the time of the accident, this circumstance did not negate the errand for her employer. This court stated that “[w]hen a trip is made for both a business and personal motive, it is deemed to be an employment activity for workers’ compensation purposes.” Id. at 989; see also Brack v. Glen Johnson, Inc., 418 So.2d 1209, 1211 (Fla. 1st DCA 1982)(holding that the special errand exception applied to a worker who was injured on his way to work after making a ten mile detour at the request of his employer and the accident was therefore compensable).
The instant case is similar to Tampa Airport Hilton Hotel and Hopkins if the table is found not to be a gift. Although at the time of the accident the claimant was going home on the same route that he usually takes, the purpose of the trip during which the claimant was injured served a business purpose for the employer as well as the personal convenience of the claimant. Likewise, although the special errand of picking up the table had been completed and the claimant had returned to his normal route home, the claimant made special arrangements and went out of his way to perform a special errand for his employer.
In reaching her decision, the JCC relied on this Court’s decision in Viejo Arco Iris, Inc. v. Luaces, 395 So.2d 225 (Fla. 1st DCA 1981). In Luaces, a plumber who usually returned home at 4:00 p.m. left work at 3:55 p.m. The employer had requested that the claimant pick up plumbing materials at the supply store which was on his route home. After picking up the materials, the ■ claimant resumed his trip home and was involved in an automobile accident at 4:05 p.m. The special errand exception to the going and coming rule did not apply because the plumbing supply store was directly on the claimant’s route home, the employee was not subject to a sudden call by the employer, and the burden of picking up the materials was minor when viewed in the context of the claimant’s usual duties and his usual route home. Id. at 226.
This court in Hopkins ■ distinguished Luaces on the facts.. Unlike in Hopkins, the employee in Luaces was injured on a regular and frequent journey, was not on a sudden call by the employer, and the burden of picking up the materials was minor when viewed in the context of the employee’s usual route home. Hopkins, 525 So.2d at 989. The claimant in Hopkins, on the other hand, responded to a sudden call that required travel on an unusual route in order to bring the supplies to work, thus increasing the burden. Id.
In the instant case, as in Hopkins, the claimant received a sudden call that required him to leave the plant and travel an unusual route in order to assemble the computer table. This additional burden was not minor. Further, although the claimant testified that he was not planning on assembling the table that night, he intended to assemble the table at work the following morning and deliver it to Mrs. Sengelmann by 10:00 a.m. The burden of the errand included assembling the table and delivering it to Mrs. Sengelmann, which may not be considered complete until the fully-assembled table was delivered to the Sengelmann home the following morning. See Elec. Serv. Clinic v. Barnard, 634 So.2d 707, 710 (Fla. 1st DCA 1994) (holding that employee’s automobile accident on the way home was compensa-ble; the employee was on a special errand requiring the completion of an additional round trip to employer).
The JCC, in the instant case, found that the table was not work-related paraphernalia, but was of a personal nature for the *518 manager of the company, and therefore, the claimant’s act of carrying the computer table did not serve a sufficient business purpose. However, section 440.092(3) Florida Statutes (1999), provides:
An employee who is injured while deviating from the course of employment, including leaving the employer’s premises, is not eligible for benefits unless such deviation is expressly approved by the employer, or unless such deviation or act is in response to an emergency and designed to save life or property.
In the instant case the Appellant testified that he was told by the vice president and general manager of the company to perform the errand, and obtained permission from his immediate supervisor to leave the plant after telling the supervisor what he was going to do. These facts, if proven, would demonstrate that the employer approved the errand, even if it was a deviation from employment.
Accordingly, the JCC was incorrect in denying the compensability of Appellant’s claim as a matter of law and not resolving the factual conflict of whether the claimant received the computer table as a gift or was attempting to assemble the table for Mr. Sengelmann at his direction.
REVERSED and REMANDED for further proceedings consistent with this opinion.
BROWNING, POLSTON and HAWKES, JJ., concur.

. According to the claimant, Mr.Sengelmann told him to get someone to clock out for him, and another employee agreed to do so. The employee denied that he agreed to do so. The claimant testified that after Mr. Senglemann denied that he had instructed him to assemble the table, the claimant requested a copy of his time card from the cards custodian. The card was not produced immediately. When he received the card, it reflected that he was clocked out at 3:30 p.m.-